UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JACK ZAS, JOSEPH BURNE, NEAL     :
GRUTTEMEYER, TODD ADAMS, MARC  :
ANGERVIL, MICHAEL BADALATO, ALI  :
BASHARAT, JOSEPH BERCHIELLI,     :
ALBERT DATTALO, ANGELA MARIE    :
McDANIEL as the Executrix of the Estate of :
Patrick Dattalo, Sr., PATRICK DATTALO,  :   CIVIL ACTION NO. 2:12-cv-01649 (SRC)(MAS)
JR., STEVEN DePALMA, STEPHEN    :
LAMPO, DOUG LAWRENCE, SR.,     :
ANTHONY MAURIELLO, CHARLES    :
OCERA, RAFAEL PEREZ, STEVE     :
PRIMAVERA, FABIO SARRUBBO and  :
DERRICK TURNER, MICHAEL      :
WINKWORTH and RAYMOND SUAZO,  :
individually and on behalf of all others   :
similarly situated,             :
                            :
           Plaintiffs,      :
    v.                   :
                            :
CANADA DRY BOTTLING COMPANY   :
OF NEW YORK, L.P., CDNY       :
CORPORATION, HAROLD HONICKMAN,:
KEVIN WALKER, MARK JOHNSON,   :
PATRICK BURKE and JOHN DOES 1-5,  :
           Defendants.     :
                            :

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS CERTAIN DAMAGES PLEADED IN THE REVISED SECOND AMENDED COMPLAINT

---

Of Counsel and on the Brief:       Mandelbaum, Salsburg, Lazris & Discenza, P.C.
                           155 Prospect Avenue
STEVEN I. ADLER           West Orange, New Jersey 07052
ROBERT S. DOWD          (973) 736-4600
                           Attorneys for Plaintiffs

                           The Law Offices of Robert S. Dowd, Jr., LLC
                           Co-counsel for Plaintiffs

597813

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ...................................................................................................... 1

    I.    STANDARD OF REVIEW ................................................................ 2

    II.    THE DETERMINATION CONCERNING HOW TO CALCULATE
        OVERTIME IS PREMATURE AND, IN ANY EVENT, PLAINTIFFS
        ARE ENTITLED TO TIME AND A HALF FOR OVERTIME ............................ 4

    III.    PLAINTIFFS STATE A CLAIM FOR IMPERMISSIBLE DEDUCTIONS
        UNDER THE FLSA AND THE NJWHL……………………………………14

    IV.    PLAINTIFFS WITHDRAW THEIR CLAIM FOR PUNITIVE
        DAMAGES UNDER ERISA……………………………………………17

    V.    PLAINTIFFS' RETALIATION CLAIMS SHOULD NOT BE DISMISSED
        BECAUSE THEY ARE BASED UPON DEFENDANTS' MISCALCULATION
        OF OVERTIME AND DIFFERENCES BETWEEN PLAINTIFFS'
        CURRENT COMPENSATION PACKAGE AND WHAT THEY
        LIKELY WOULD HAVE EARNED HAD THEY NOT FILED SUIT………..18

CONCLUSION……………………………………………………………………..22

# **TABLE OF AUTHORITIES**

**CASES**                                                                          **PAGES**

Arnold v. Ben Kanowsky, Inc., 361 U.S. 388 (1960) ............................................................... 9

Arriaga v. Fla.Pac. Farms, LLC, 305 F.3d 1228 (11th Cir. 2002) ....................................... 14

Ashcroft v. lqbal, 556 U.S. 662 (2009) ............................................................................. 2, 10

Auto Lenders v. Gentilini Ford, 181 N.J. 245 (2004) ......................................................... 18

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .................................................................. 3

Blotzer v. L-3 Communications Corp., 2012 WL 6086931 (D. Ariz. Dec. 6, 2012) ................ 8

Caldwell Trucking PRP Group v. Sapulding Composites Co., 890 F.Supp. 1247 (D.N.J. 1995) ............... 2

Friedrich v. U.S. Computer Servs., 974 F.2d 409 (3d Cir. 1992) .......................................... 9

Ghobrial v. Pak Mfg, No. 11-2023(es)(clw), 2012 U.S. Dist. Lexas 35189 (D.N.J. March 13, 2012) ...... 21

Gould Elec. Inc. v. United States, 220 F.3d 169 (3d Cir. 2000) ........................................... 3

Jacob v. Duane Reade, Inc., 293 F.R.D. 578 (S.D.N.Y. 2013) ............................................. 7

Kachman v. SunGard Data Systems, Inc., 109 F.3d 173 (3d Cir. 1997) ............................... 21

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991) ................................... 3

Kornbau v. Frito Lay N. Am., Inc., No. 4:11CV02630, 2012 U.S. Dist. LEXIS 123629 (N.D. Ohio, Aug. 20, 2012) ............................................................................................... 7, 8, 19

Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir. 1993) .................................................................. 2

Krohn v. David Powers Homes, Inc., No. H-07-3885, 2009 U.S. Dist. LEXIS 55591 (S.D. Tex. June 30, 2009) ....................................................................................................... 7, 19

Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir. 1956) .................................................. 3

Miller v. Essex County Welfare
Board, 151 N.J. Super. 280 (App.Div. 1977) ................................................................... 15

N.J. Dep't of Labor v. Pepsi-Cola Co., 2002 N.J. Super. Unpub. LEXIS 2 (App. Div. Jan. 31, 2002) ..... 10

## <u>TABLE OF AUTHORITIES (Continued)</u>

<u>CASES</u>                                                                                                    **PAGES**

<u>New Jersey Dept. of Labor v. Pepsi-Cola Company</u>, 2000 WL 34401845 (N.J. Admin. Aug. 29, 2000). 12

<u>O'Neill v. Mermaid Touring, Inc.</u>, 2013 WL 4829266 (S.D.N.Y. Sept. 10, 2013) ...................................... 8

<u>Ortiz v. Paramo</u>, No. 06-3062,2008 U.S. Dist. Lexis 72387 (D.N.J. Sept. 19, 2008) ................................ 15

<u>Packard v. Pittsburgh Transp. Co.</u>, 418 F.3d 246 (3d Cir. 2005)................................................................ 9

<u>Phillips v. County of Allegheny</u>, 515 F.3d 224 (3d Cir. 2008) ................................................................. 10

<u>Semerenko v. Cendant Corp.</u>, 224 F.3d 165 (3d Cir. 2000) ...................................................................... 10

<u>Tenn. Coal Iron & R. Co. v. Muscoda Local No. 123</u>, 321 U.S. 590 (1944)............................................... 9

<u>Todaro v. Twp. of Union</u>, 27 F.Supp. 2d 517 (D.N.J. 1998) ...................................................................... 9

<u>Wallace v. Countrywide Home Loans, Inc.</u>, 2013 WL 1944458 (C.D. Cal. April 29, 2013)....................... 8

<u>Wilson v. Amerada Hess Corp.</u>, 168 N.J. 236 (2001)............................................................................... 18

<u>Zavala v. Wal Mart Stores, Inc.</u>, 691 F.3d 527 (3d Cir. 2012) ................................................................... 9

## Statutes

N.J.S.A. 34:11-4.2.....................................................................................................................................15

N.J.S.A. 34:11-4.4(a).................................................................................................................................15

N.J.S.A. 34:11-56a24..............................................................................................................................13,18

29 U.S.C.§215(a)(3)...................................................................................................................................18

## Rules

F. R. Civ. P. 12(b)(6) ................................................................................................ 1

**Regulations**

29 C.F.R. §778.100 ................................................................................................. 4

29 C.F.R. §778.106 ................................................................................................. 8

29 C.F.R. §778.114 ................................................................................. 8, 10, 11, 12

29 C.F.R. §778.117 ................................................................................................. 4

29 C.F.R. §778.118 ................................................................................................. 5

29 C.F.R. §778.310 ................................................................................................. 6

N.J.A.C. 12:56-6.6(a)(3) ........................................................................................ 15

## <u>INTRODUCTION</u>

This brief is submitted on behalf of Plaintiffs ("Plaintiffs" or the "Drivers") in opposition to Defendants' partial motion to dismiss certain claims/damages pleaded in the revised second amended complaint ("RSAC") pursuant to Federal Rule of Civil Procedure ("F. R. Civ. P.") 12(b)(6).

As set forth below, Defendants are seeking inappropriate relief in the guise of a Rule 12(b)(6) motion.  They are not contending that the Drivers' claims to overtime under the Fair Labor Standards Act ("FLSA") or the New Jersey Wage and Hour Laws ("NJWHL") fail to state a claim.  In fact, they couldn't do that with a straight face as they have converted the Drivers to non-exempt employees and have begun paying them overtime as a result of this lawsuit.  Rather, they are only questioning the methodology to be employed at trial to quantify the damages owed.  <u>See</u> Point I, <u>infra</u>.  In fact, contrary to Defendants' contention, the Drivers are entitled under both the FLSA and the NJWHL to time and one-half for all overtime hours. <u>See</u> Point II, <u>infra</u>.

As set forth below, Plaintiffs have set forth viable claims under both the FLSA and the NJWHL for impermissible deductions taken against their wages by CDNY.  Those deductions, and the manner in which Plaintiffs have been compensated for overtime hours since January 14, 2013, have resulted in Plaintiffs being paid below minimum wage under the FLSA and the expenses forced upon Plaintiffs also violate the NJWHL.  <u>See</u> Point III, <u>infra</u>.

Finally, as to Plaintiff's retaliation claim, it should not be dismissed because it is based upon Defendants' miscalculation of overtime since January 14, 2013 and differences between Plaintiffs' current compensation package and what they likely would have earned had they not been retaliated against by Defendants for having filed this suit.  See <u>Point</u> V, <u>infra</u>.

## I.    <u>STANDARD OF REVIEW</u>

The relief Defendants now seek has nothing to do with Plaintiffs' alleged failure to state a claim.  There is no dispute here that Plaintiffs have a valid claim that they were misclassified as independent contractors rather than non-exempt employees and, therefore, are entitled to overtime compensation.  In fact, Defendants have essentially conceded this by reclassifying Plaintiffs as W-2 employees during the pendency of this suit and by paying them some amount of overtime for hours worked over forty (40) in any given week.  Defendants' argument, improperly made via a 12(b)(6) motion, is that Plaintiffs' damages for the failure to pay overtime should be calculated at half-time rather than the standard time and a half methodology.  Again, however, such an argument only challenges the quantum of Plaintiffs' damages, and not whether they have stated viable claim upon which relief can be granted.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993) (Defendant bears the burden of establishing that Plaintiff has failed to set forth a claim from which relief may be granted); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) (on a 12(b)(6) motion a court must determine whether the allegations plausibly give rise to an entitlement to relief).  Here, Defendants cannot in good faith suggest that Plaintiffs' misclassification allegations do not plausibly give rise to an entitlement to some form of relief.  All Defendants can argue is that the quantum of damages may be less than Plaintiffs claim, but that is far short from establishing that Plaintiffs lack a cognizable claim to overtime compensation.

Putting aside that the relief Defendants seek is inappropriate on such an application, the relief sought still should be denied.  Motions to dismiss are disfavored and should rarely be granted because of long-established federal policy to decide cases on the proofs.  <u>Caldwell Trucking PRP Group v. Spaulding Composites Co.</u>, 890 F.Supp. 1247 (D.N.J. 1995),

citing Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir. 1956).  A court must evaluate the merits of the claims by accepting all allegations in the complaint as true and must view them in a light most favorable to Plaintiffs.  Gould Elec. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).  Defendant bears the burden of showing that no claim exists.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  A claim must survive a motion to dismiss if it identifies "facts that are suggestive enough to render [the claim] plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  Having already reclassified Plaintiffs as employees entitled to overtime, Defendants here cannot seriously question the plausibility of Plaintiffs' overtime claims and, therefore, Defendants' motion to dismiss should be denied.

## II.

## THE DETERMINATION CONCERNING HOW TO CALCULATE OVERTIME IS PREMATURE AND, IN ANY EVENT, PLAINTIFFS ARE ENTITLED TO TIME AND A HALF FOR OVERTIME

As set forth in Point I, supra, the issue concerning how to calculate Plaintiffs' overtime should not be decided on a Rule 12(b)(6) motion. Clearly, Plaintiffs state a claim for overtime because there are ample facts that they were misclassified as independent contractors.

Defendants concede throughout their moving papers that, prior to January 14, 2013, CDNY treated Plaintiffs as independent contractors. Therefore, the commissions paid them were never intended to be wages. Accordingly, Defendants should not now be able to reclassify those payments post hoc to fulfill that portion of CDNY's obligation to pay employees straight time for hours worked over forty (40) such that Defendants now only owe Plaintiffs half-time.

All issues concerning overtime must start with the basic premise that the overtime laws only apply to employees. As the regulations make clear, "[s]ection 7(a) of the Act deals with maximum hours and overtime compensation for employees who are within the general coverage of the Act and are not specifically exempt from its overtime pay requirements." 29 C.F.R. §778.100. (Emphasis added). This regulation continues as follows:

> "It [the Act] prescribes the maximum weekly hours of work permitted for the employment of such employees in any workweek without extra compensation for overtime, and a general overtime rate of pay of not less than one and one-half times the employee's regular rate which the employee must receive for all hours worked in any workweek in excess of the applicable maximum hours." (Emphasis added).

The same holds true for those employees who are compensated solely based upon commissions. The regulations state that, for employees, commissions are included to determine an employee's regular rate of pay for purposes of calculating overtime pay. See 29 C.F.R. §778.117. Here,

however, as Defendants concede throughout their moving papers, they treated Plaintiffs, at least until January 14, 2013, as independent contractors.  Therefore, they should not now be allowed to take the position that "hey, we goofed.  Plaintiffs really were employees and we intended the commissions to cover not only their time for forty (40) hours of work each week but to also cover their straight time for hours over forty (40)."  Even the section of the regulations Defendants rely upon when attempting to credit the commissions toward overtime hours at straight time makes clear that "[w]hen the commission is paid on a weekly basis, it is added to the <u>employee's</u> other earnings . . . ."  29 C.F.R. §778.118 (emphasis added).

Defendants cannot have their cake and eat it too.  CDNY paid its drivers for years as independent contractors, without withholding all of the employment taxes and now, all of a sudden, it should not be allowed to re-classify the Drivers retroactively as employees and suggest that the commissions paid them were really intended to be salary at straight time for all hours worked.

Had CDNY paid the Drivers a base salary plus commissions as W-2 employees, or even straight commissions for all hours worked as W-2 employees, its argument would have some merit because there would have been an understanding that the total amount paid the employees was intended to cover all hours worked.  Here, however, they treated the Drivers in all respects as independent contractors and now, in hindsight, suggest that the commissions paid were, in fact, wages intended to cover their overtime hours at straight time.  Query, why should Defendants be allowed to allocate the commissions paid to cover the Drivers' overtime hours at straight time when they didn't withhold appropriate taxes and didn't even consider the number of hours they worked in the first place?  Defendants maintained no time records.  There was no punch clock.  Surely, if Defendants truly believed they needed to comply with the overtime laws

they would have had a policy in place to pay drivers additional salary to the extent the Drivers' commissions fell below minimum wage, but they had no such policy or practice.

Allowing Defendants to get away with this approach is contrary to the purposes behind the overtime laws.  An analogy to the regulation dealing with paying drivers a fixed sum for varying amounts of overtime makes this clear.  An employer is not allowed to treat a lump sum payment as a premium for overtime calculation purposes if it is paid without regard to the number of overtime hours worked.

> "A premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked <u>does not qualify as an overtime premium</u> even though the amount of money may be equal to or greater than the sum owed on a per hour basis.  For example, an agreement that provides for the payment of a flat sum of $75 to employees who work on Sunday does not provide a premium which will qualify as an overtime premium, even though the employee's straight time rate is $5 an hour and the employee always works less than 10 hours on Sunday.  Likewise, where an agreement provides for the payment for work on Sunday of either the flat sum of $75 or time and one-half the employee's regular rate for all hours worked on Sunday, whichever is greater, the $75 guaranteed payment is not an overtime premium.  The reason for this is clear.  If the rule were otherwise, <u>an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked</u>.  The Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work would thus be defeated.  For this reason, where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate and may not be credited against statutory overtime compensation due."

29 C.F.R. §778.310.  (Emphasis added).

Here too, allowing Defendants to re-label as straight time for hours over forty (40) what was not overtime compensation to begin with defeats the "congressional purpose" behind the overtime

laws.  As discussed in this Point below, <u>see</u> p. 12, it forces a Driver to earn decreasing amounts per hour the longer he works.

The two cases relied upon by Defendants also do not "advance the ball" with regard to their argument that the commissions paid should be applied to overtime.  Both cases involved employees, rather than independent contractors, as the decisions note at the outset of each opinion.  <u>Krohn v. David Powers Homes, Inc.</u>, No. H-07-3885, 2009 U.S. Dist. LEXIS 55591 (S.D. Tex. June 30, 2009) ("Plaintiff was <u>employed</u> by [Defendant] from May 1, 2005 until September 27, 2007 . . ."); <u>Kornbau v. Frito Lay N. Am., Inc.</u>, No. 4:11CV02630, 2012 U.S. Dist. LEXIS 123629 (N.D. Ohio, Aug. 20, 2012) ("Dale Kornbau and 36 other similarly situated Plaintiffs are <u>employed by</u> Frito Lay as Route Sales Representatives . . .").  Moreover, the District Court Judge in <u>Krohn</u> held that "[w]here, as here, an <u>employee</u> is paid commission based wages, . . . [t]he <u>employee's</u> overtime compensation is one half the wage rate . . . for each hour of overtime worked in the workweek."

Courts have rejected what Defendants are attempting to do here in other misclassifications cases.  For example, in misclassification cases involving the fluctuating work week ("FWW") method of calculating overtime at fifty percent (50%) of the regular rate for all hours over forty (40) in any given week, courts have rejected the FWW approach and have required overtime at time and a half because the FWW methodology requires both a clear understanding that employees will be paid at fifty percent (50%) for hours over forty (40) and the contemporaneous payment of the fifty percent (50%) amount.  <u>Jacob v. Duane Reade, Inc.</u>, 293 F.R.D. 578 (S.D.N.Y. 2013) ("many district courts . . ., must notably in the Second and Ninth Circuits, have held the FWW method to be inappropriate in misclassification cases, construing the FWW method's applicability as dependent on two criterion that are necessarily missing in

any successful misclassification case: (1) a "clear mutual understanding that the employer will pay the employee a fixed salary regardless of the hours worked; and (2) the contemporaneous payment of a fifty percent (50%) overtime premium in excess of all hours above forty (40) in any given workweek." See also O'Neill v. Mermaid Touring, Inc., 2013 WL 4829266 (S.D.N.Y. Sept. 10, 2013) (". . . many district courts have determined that the FWW methodology should not be applied [retroactively] in a misclassification case . . . [because] an employer cannot prove a clear mutual understanding or contemporaneous payment of overtime premium . . .") Wallace v. Countrywide Home Loans, Inc., 2013 WL 1944458 (C.D. Cal. April 29, 2013) quoting Blotzer v. L-3 Communications Corp., 2012 WL 6086931 (D. Ariz. Dec. 6, 2012) ("In a misclassification case, at least one of the parties initiated employment with the belief that the employee was exempt from the FLSA, paid on a salary basis, and therefore not entitled to overtime . . ."). While in the present case there is no requirement of a clear mutual understanding between CDNY and the Drivers as there is under the FWW method described in 29 C.F.R. §778.114, there still is a requirement under §778.118 that the Drivers receive payment of the remaining fifty percent (50%) for their overtime hours just like FWW employees and that payment is to be made on the regular pay day for the period that the workweek ends. See 29 C.F.R. §778.106. Just like FWW employers, employers paying commissions to independent contractors in misclassification cases should not be allowed to retroactively take advantage of a regulation when it didn't treat them as employees by contemporaneously paying them the fifty percent (50%) overtime premiums.

The standard method for paying overtime is time and a half. Kornbau, supra. Moreover, the burden is on Defendant to establish entitlement to rely upon this other methodology to calculate overtime especially in light of the FLSA's remedial purpose. Blotzer,

supra. (finding that the FWW method should not be applied in a misclassification case in light of the FLSA's remedial purpose"); Tenn. Coal Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944); Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960) (because they protect the FLSA's remedial policies, "the prerequisites to using the fluctuating workweek must be narrowly construed against employers"); Zavala v. Wal Mart Stores, Inc., 691 F.3d 527, 537 (3d Cir. 2012) ("the FLSA is a remedial statute that should be liberally construed"); Todaro v. Twp. of Union, 27 F.Supp. 2d 517, 533 (D.N.J. 1998) ("Because the FLSA serves a remedial purpose, it must not be interpreted or applied in a narrow, grudging manner").  In Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 258 (3d Cir. 2005) the Third Circuit held that "when an employer contends that a sub-set of its employees are excluded from FLSA overtime entitlement by virtue of [an] . . . exemption, '[i]t is the employer's burden to affirmatively prove that its employees come within the overtime exemption, and any exemption from the Act must be proven plainly and unmistakenly;" quoting Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992).

At the very least, considering the law is not settled in a misclassification case involving plaintiffs who were treated for all intents and purposes as independent contractors, the issue should not be decided on a motion to dismiss.  The issue raised by Defendants is a question of how to calculate Plaintiffs' damages, and not whether Plaintiffs state a claim upon which relief can be granted.  Therefore, the issue should not be decided on a 12(b)(6) motion.   It should only be considered by the Court upon a complete record after fact discovery.

As to the period after January 14, 2013, while Plaintiffs acknowledge they have been paid some amount of overtime, they do not yet know if their compensation was calculated correctly because they haven't been provided with full discovery.  That is why for the period on

and after January 14, 2013 the RSAC states, in pertinent part, that "some of the delivery persons were not paid for forty (40) hours of work even though they worked that many hours, and some were not paid at half time for some of their overtime hours."  <u>See</u> RSAC, ¶73.  As Defendants admit, those allegations as to incorrect compensation for overtime hours must be taken as true when considering a motion to dismiss and the complaint must be construed in a light most favorable to Plaintiffs.  <u>See</u> Defendants' moving brief ("Db") at pp. 5-6.  <u>See</u> <u>also</u> <u>Phillips v.</u> <u>County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008).  At this stage of the proceedings, the issue is not whether Plaintiffs will ultimately prevail, but whether Plaintiffs can prove a set of facts consistent with their allegations that will entitle them to relief.  <u>Semerenko v. Cendant</u> <u>Corp.</u>, 224 F.3d 165, 173 (3d Cir. 2000).  As confirmed by the United States Supreme Court, all that Plaintiffs must do to survive a motion to dismiss is plead sufficient factual material, which a court must accept as true, to state a claim of relief that is "plausible on its face."  <u>Ashcroft v.</u> <u>lqbal</u>, 556 U.S. 662, 678 (2009).  Here, the RSAC surely pleads a plausible claim that incorrect amounts of overtime have been paid on and after January 14, 2013 and, therefore, that portion of Plaintiffs' motion to dismiss also should be denied.

Finally, apparently as a throw-away argument, Defendants attempt to obtain the same half time methodology when calculating overtime under the NJWHL, <u>citing</u> <u>N.J. Dep't of</u> <u>Labor v. Pepsi-Cola Co.</u>, 2002 N.J. Super. Unpub. LEXIS 2 (App. Div. Jan. 31, 2002).  <u>See</u> Db at p. 10.  Defendants, however, are on even shakier ground on the state law overtime claim.  That unreported decision, however, was a FWW case, not a case dealing with misclassification of independent contractors for whom the employer was retroactively seeking to re-label commissions as salary.  Moreover, in <u>Pepsi</u>, the Commissioner refused to apply the FWW method and instead awarded claimants overtime at time and one-half, holding:

The ALJ, relying on respondent's formula for calculating overtime, the so-called fluctuating workweek method as set forth in 29 C.F.R. §778.114 of the Fair Labor Standards Act, determined that the intervenors should not be paid overtime <u>at the State-mandated rate, but at the lesser federal regulatory rate of ½ the regular hourly wage rate</u>. I find that outcome legally anomalous and reverse the ALJ thereon.

Cognizance must be taken of the fact that, in the course of the lengthy OAL hearing in this matter, respondent never presented a scintilla of testimony which could serve as a sound legal basis for dismissing our Legislature's mandate, as embodied in N.J.S.A. 34:11-56a4, that New Jersey workers who work more than 40 hours a week should be paid at 1 ½ times their hourly rate. In this matter, <u>it is the laws of this sovereign State which will be utilized to determine compensation owed to its working citizens</u>. It, therefore, must be remembered that a state may concurrently exercise its police power as derived from the Tenth Amendment's reservation to the states of powers not delegated to the Federal Government nor prohibited to the states. Such an exercise of power will be sustained even in those instances where it may affect interstate commerce incidentally, so long as it does not unduly burden it. Thus, where as in the case we are not dealing with the weighty issues which arise from a claim of interference by New Jersey in interstate commerce, the implied issue of Federal preemption is not viable. Indeed, it should be remembered that <u>the Legislature of this State, in enacting the overtime provision of the Wage and Hour Law requiring payment of time and a half for each hour worked in excess of 40 hours in a workweek (N.J.S.A. 34:11-56a4), did so in a permissible exercise of its police power</u>. <u>Thus, it is that law alone which is applicable hereto</u>. Moreover, as was correctly noted by counsel for the intervenors in his exceptions, respondent never established the clear factual predicate required to successfully invoke the payment scheme envisioned by 29 C.F.R. §778.114; specifically, no proofs were adduced below that would have established the existence of a clear mutual agreement between the intervenors and respondent that the intervenors' base pay and commissions were intended to cover <u>all hours worked</u> in any given week. No such agreement exists within the evidentiary framework of this case. Furthermore, while adopting respondent's proffered methodology, the ALJ (1) never made a finding that the requisite clear, mutual agreement does, in fact, exist and (2) <u>never explained why respondent's methodology should supersede that contained in the New Jersey Wage and Hour Law. The foregoing alone mandates that the ALJ be reversed on this issue</u>.

11

In addition thereto, it is noteworthy that 29 C.F.R. §778.114(a) postulates a scenario where the employee receives "extra compensation, in addition to such salary for overtime hours worked . . ."  The intervenors, however, never received extra compensation, i.e., overtime pay, since respondent has viewed them, and all such similarly situated employees, as outside salespersons.  Furthermore, 29 C.F.R. §778.114(c) clearly states that the fluctuating workweek method of calculating overtime pay may not be utilized ". . .unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek . . ." (emphasis in original).  That requisite clear understanding on the part of the intervenors is wholly absent herein and was never proven by respondent.  Additionally, the latter regulation also provides that an employee covered thereunder shall receive his/her full salary even when the employee has not worked the full workweek.  As the petitioner's counsel correctly points out in her exceptions, the testimony of the intervenors demonstrated that when they worked less than 40 hours a week, they were not guaranteed to receive a fixed salary; rather, they were in fact penalized therefor.

New Jersey Dept. of Labor v. Pepsi-Cola Company, 2000 WL 34401845 (N.J. Admin. Aug. 29, 2000).

The Appellate Division in Pepsi affirmed, concluding "the Commissioner's approach is more consistent with the facts and the public policy involved in the law than Pepsi's [half-time] approach."  Id. at 95.  As to public policy, the Appellate Division noted, particularly relevant to the within action, as follows:

"The Commissioner's interpretation of the overtime law's requirements safeguards the employees' 'health, efficiency and general well-being' and discourages Pepsi from prevailing upon its [delivery persons] to spend excessive hours handling heavy cases of beverages.  Because Pepsi's approach could result in a decreasing hourly wage for the [delivery persons] as they worked more hours, unless their commissions made up the difference, the general incremental labor costs would be minimized, so that approach would be less likely to discourage the employer from requiring the employees to work excessive hours."  Id. at 96.

Finally, the Appellate Division affirmed the Commissioner because New Jersey law does not have a comparable FWW provision.  Id. at 96.

In summary, New Jersey law provides for payment of overtime at time and one-half, and does not recognize the federal FWW methodology.  Time and one-half is also in line with this State's public policy as set forth in N.J.S.A. 34:11-56a.  Defendants ignored New Jersey's law and regulations by requiring Plaintiffs to lug around heavy cases of soda for excessive hours for an ever decreasing hourly rate.  As the <u>Pepsi</u> decisions make clear, Plaintiffs undeniably have stated a claim upon which relief can be granted under the NJWHL.

**III.**

**PLAINTIFFS STATE A CLAIM FOR IMPERMISSIBLE DEDUCTIONS
UNDER THE FLSA AND THE NJWHL**

Defendants argue that Plaintiffs cannot state a claim for impermissible deductions under the FLSA or the NJWHL. Defendants are wrong on both counts.

As to the FLSA, Plaintiffs agree that it only covers minimum wages and overtime pay. As Defendants note, courts have held that deductions violate the FLSA when they are incurred primarily for the benefit or convenience of the employer and reduce the wages of a worker below minimum wage. See Db at p.11, citing Arriaga v. Fla.Pac. Farms, LLC, 305 F.3d 1228, 1241 (11th Cir. 2002). Here, depending upon each Plaintiff's expenses that were incurred in a particular week for the convenience of CDNY and the number of hours they worked in that week, a Plaintiff could have earned less than minimum wage. For example, if a Plaintiff earned $1,000.00 for and as commissions in a week that he worked 70 hours (which was not unusual), but paid $350 for a truck repair and $250 for gas and tolls, that Plaintiff would have earned less than minimum wage ($400 ÷ 70 hours = $5.72/hour). Surely this claim is covered by Count II of the RSAC. [1]

As to impermissible deductions under the NJWHL, contrary to Defendant's contention, the NJWHL does cover the failure to pay any wages due and is not limited to minimum wages and overtime pay. See N.J.A.C. 12:56-5.1 which states, in pertinent part, as follows:

---

[1] Discovery has just begun but Plaintiffs have alleged a whole laundry list of impermissible deductions that could bring their pay below minimum wage in violation of the FLSA. See RSAC, ¶s93 and 94. In fact, the RSAC indicates that, under the current pay arrangement forced upon the remaining delivery persons, they are paid well less than minimum wage for overtime hours. See RSAC, ¶76.

"Employees entitled to the benefits of the Act shall be paid for <u>all</u> <u>hours</u> worked.

(a)  All the time the employee is required to be at his or her place of work or on duty shall be counted as hours worked." (Emphasis added).

In fact, the NJWHL goes a step further.  Not only must employees be paid their regular hourly rate for all hours worked but the statute makes clear that only certain deductions are permissible from wages.  N.J.S.A. 34:11-4.4(a).  <u>Miller v. Essex County Welfare Board,</u> 151 N.J. Super. 280, 285 (App.Div. 1977).  In short, unless the deductions fall within the fifteen (15) enumerated permissible categories  -- and here they do not -- it is inappropriate for an employer to withhold or divert any portion of an employee's wages.  <u>See</u> N.J.S.A. 34:11-4.4(b).

The cases cited by Defendants are inapposite.  In <u>Mitchell v C&S Wholesale Grocers, Inc.</u> No 10-2354(JLL), 2010 U.S. Dist. Lexis 68269 (D.N.J. July 8, 2010), the court dismissed Plaintiff's claim without prejudice because, unlike here, [2]  Plaintiff did not allege in his complaint "any deductions or withholding" of wages.  In <u>Ortiz v. Paramo,</u> No. 06-3062, 2008 U.S. Dist. Lexis 72387 (D.N.J. Sept. 19, 2008) the court granted summary judgment in favor of <u>Plaintiffs,</u> finding that the employer made impermissible deductions from Plaintiff's wages in violation of both the FLSA (because it brought the actual wages below the minimum wage) and the NJWHL.

In <u>N.J.A.C.</u> 12:56-6.6(a)(3) also confirms that it is impermissible for an employer to require its employees to pay for travel and other expenses incurred by the employee in the furtherance of his employer's interests.  N.J.S.A. 34:11-4.2 also requires that an employer "pay

---

[2] <u>See</u> RSAC ¶92 ("the NJWHL prohibit[s] an employer from 'withholding' or 'diverting' from an employee's wages…"); ¶93 ("…CDNY…ha(s) impermissibly deducted, diverted, withheld and/or charged, directly or indirectly, against Plaintiffs' wages…"); ¶94 ("[t]hese deductions, diversions, withholdings and/or chargebacks are in violation of …")

the <u>full</u> <u>amount</u> of wages due to his employees at least twice during each calendar month . . ."
Here, Defendants made impermissible deductions from the Drivers' pay and also failed to pay
them the full amount of their wages when due.  Accordingly, the Drivers have stated a claim
under the NJWHL for impermissible deductions.[3]

Finally, in a text book example of talking out of both sides of their mouths,
Defendants claim "because Plaintiffs were classified as independent contractors during the
relevant time period, they were not receiving <u>any</u> overtime compensation, and, therefore, the
deductions at issue by definition could not reduce such overtime compensation below the
mandated rate."  <u>See</u> Db at p. 12.  Query, if the Drivers never received "any overtime
compensation," how can Defendants take the position that what was paid Plaintiffs constitutes
straight time wages for hours over forty (40)?  Defendants' argument only furthers the Drivers'
position that they are due overtime under both the FLSA and the NJWHL at one and a half times
their regular hourly rate.  <u>See</u> Point II, <u>supra</u>.

---

[3] Plaintiffs have also pled an unjust enrichment claim with regard to the impermissible
deductions under the FLSA and the NJWHL.  <u>See</u> RSAC, Fifth Count.

16

**IV.**

**PLAINTIFFS WITHDRAW THEIR CLAIM FOR PUNITIVE
<u>DAMAGES UNDER ERISA</u>**

It was not Plaintiffs' intention to seek punitive damages in the Fourth Count of the

RSAC.  Accordingly, they withdraw their claim for such damages under ERISA.

**V**.

**PLAINTIFFS' RETALIATION CLAIMS SHOULD NOT BE DISMISSED BECAUSE THEY ARE BASED UPON DEFENDANTS' MISCALCULATION OF OVERTIME AND DIFFERENCES BETWEEN PLAINTIFFS' CURRENT COMPENSATION PACKAGE AND WHAT THEY LIKELY WOULD HAVE EARNED HAD THEY NOT FILED SUIT**

Count Six of the RSAC makes clear that Plaintiffs' retaliation claims  arise under the anti-retaliation provisions in FLSA and the NJWHL. [4]  See RSAC, ¶112 (the Defendants' conduct "was retaliatory and in reprisal for Plaintiffs filing this lawsuit and asserting their rights under the statutes referenced herein"). See 29 U.S.C.§215(a)(3) (The FLSA prohibits an employer from retaliating "against any employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this chapter…").  See also N.J.S.A. 34:11-56a24 (similar).

Defendants suggest that the new way CDNY calculated overtime on and after January 14, 2013 was not in retaliation for filing and continuing this lawsuit (See RSAC, ¶77) but because they chose to finally operate CDNY according to the law.  See Db at p. 18. However, when one's motivation for taking certain behavior is at issue, summary judgment should be denied and surely such a factual dispute also precludes granting a motion to dismiss prior to any meaningful discovery taking place.  Wilson v. Amerada Hess Corp., 168 N.J. 236, 253-254 (2001) (where claim for relief is based on allegations of the adverse party's bad faith, discovery that would adduce facts giving rise to an inference of bad faith must be permitted). Auto Lenders v. Gentilini Ford, 181 N.J. 245, 271-272 (2004) (summary judgment should

---

[4] ¶113 of the RSAC indicates that the only persons asserting retaliation claims are "Plaintiffs who were employed by CDNY as of January 14, 2013…"  Therefore, these Plaintiffs are not pursuing this claim on behalf of any other Plaintiffs or anyone else "similarly situated." Accordingly, Plaintiffs have no objection to the Court striking that reference in the WHEREFORE clause in the Sixth Count.

ordinarily not be granted where an action or defense requires a determination of a state of mind

or intent, such as claims of bad faith or duress).  Here, Plaintiffs' allegations – that the current

pay arrangement forced upon the drivers employed as of January 14, 2013 was retaliatory in that

it is more onerous that what was proposed to them previously, pays them well less than

minimum wage for overtime hours [5] and pays them only 66% of what new delivery person

trainees receive on an hourly basis --  must be taken as true on a motion to dismiss and,

therefore, Plaintiffs have pled sufficient facts supporting their retaliation claim.  <u>See</u> RSAC ¶ 76-

78.

Defendants contend that this new pay arrangement is a proper calculation of

Plaintiffs' overtime pay that is recognized as lawful under the FLSA, <u>citing</u> <u>Krohn</u> and <u>Kornbau</u>.

<u>See</u> Db at p18.  However, for the reasons articulated in Point II, <u>supra</u>, Plaintiffs vehemently

challenge the manner in which Defendants now calculate Plaintiffs' overtime pay as unlawful

under both the FLSA and the NJWHL and suggest that they are due time and one-half.  Should

this Court deny Defendants' motion concerning the calculation of Plaintiffs' overtime pay, it

must, therefore, also deny Defendants' suggestion that they did not retaliate.

As the RSAC clearly pleads, there have been a variety of actions taken by

Defendants which support Plaintiffs' retaliation claims, such as :

- The failure to pay Plaintiffs time and a half for overtime (RSAC, ¶73);

- The failure to pay some Plaintiffs for all hours worked (Id.);

- The failure to pay half time for some overtime hours (Id.);

---

[5] This allegation also supports Plaintiffs' FLSA claim relating to improper deductions causing
certain Plaintiffs to fall below minimum wage.  <u>See</u> Point III, <u>supra</u>.

- The current pay arrangement being more onerous than that proposed previously (RSAC, ¶76);

- Defendants paying Plaintiffs less than minimum wage for overtime hours (id.); and

- Defendants paying Plaintiffs only 66% of what new delivery person trainees receive on an hourly basis. (Id).

Plaintiffs do not dispute that they received some additional benefits when they were reclassified as non-exempt employees.  However, some of these benefits, such as paid holidays and health benefits, were mandated as Defendants were providing these same benefits to others who had always been treated as employees.  That Plaintiffs also earned a reduced commission in addition to a minimal base salary, while Defendants contend new trainees only receive a higher base salary,[6] is not the death knell of Plaintiffs' retaliation claim.  If, as Plaintiffs have pled in the RSAC, they are being paid less now due to this lawsuit then they would have been had Defendants on their own began treating Plaintiffs in accordance with the law, there has been an "adverse employment action" because it produced an injury or harm, as Defendants concede.  See Db at p. 16.

Here, Plaintiffs allege that they are being paid less than they otherwise would be due to this lawsuit.  This not only meets the EEOC's standard, finding unlawful "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or other from engaging in protected activity" but the Third Circuit's standard as well that Plaintiffs must show that a reasonable employee would have found the challenged action

---

[6] Defendants' statements concerning new trainees' compensation raise matters outside the pleadings which are not to be considered on a 12(b)(6) motion unless it is converted to one for summary judgment.  See Rule 12(d).

materially adverse.  In <u>Ghobrial v. Pak</u> Mfg, No. 11-2023(ES)(CLW), 2012 U.S. Dist. Lexas

35189 (D.N.J. March 13, 2012), this Court held that it could better determine whether

"Plaintiff's protected conduct was a substantial or motivating factor in defendant's decision, . . .

once the parties have had an opportunity to engage in additional discovery", <u>citing</u> <u>Kachman v.</u>

<u>SunGard Data Systems, Inc.</u>, 109 F.3d 173, 178 (3d Cir. 1997) ("inquiry into the motives of an

employer is highly context-specific").  Therefore, the <u>Ghobrial</u> Court allowed plaintiff to pursue

his retaliation claim and the same result should be reached here.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request  that, other than deleting the reference to punitive damages in the Fourth Count and the reference to others similarly situated in the Sixth Count, Defendants' motion to dismiss should be denied.


Respectfully submitted,


MANDELBAUM, SALSBURG, LAZRIS
& DISCENZA, P.C.
Co-Counsel for Plaintiffs


By: /s/Steven I. Adler, Esq.
        Steven I. Adler

Dated:  February 19, 2014